We'll hear argument next in Case 22-1218, Smith v. Spizzirri. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. Section 3 unambiguously mandates a stay pending arbitration, and the FAA's plain text, structure, and purpose confirm that conclusion. Congress directed that a court shall stay the trial of the action until the arbitration is complete. There is no mention of dismissal, and there are no exceptions for cases where all claims are subject to arbitration. If a court ignores that command and dismisses, it activates a premature right to appeal contrary to the FAA's reticulated scheme. It eliminates the essential backdrop that protects litigant rights if a party compels arbitration but abandons the arbitration process, which has happened in this very case. And critically, it invites wasteful disputes that pointlessly burden parties and whether to stay or dismiss and then take appeals over whether to stay or dismiss. A bright-line rule answers that procedural question in a manner that best preserves judicial and party resources and directly advances the core purpose of the FAA itself, eliminating waste, avoiding unnecessary litigation, and sending parties to arbitration as quickly as possible. I welcome the Court's questions. Mr. Geiser, what difference does it make to grant a stay here or dismissal without prejudice? Well, it makes a big difference whether we have a suit to come back to. The arbitration has now failed. The respondents have not paid their fees. Our clients will have to file new suits, engage in new service, do new case-initiating documents, and waste our time and the Court's time. We also face a situation where respondents could then move to compel arbitration again. But aren't you also encouraging people to start out in federal court? I don't believe so, Your Honor. That hasn't been a problem in any of the six circuits that have adopted the majority rule now for quite some time. Even if a party did file a suit in the hopes of anchoring federal jurisdiction, the Court could always decline to exercise supplemental jurisdiction and not decide any of the FAA motions, which would render the entire practice a problem. Has there been a problem when cases have been dismissed without prejudice to get back into federal court? There are sometimes limitations problems, which you can see both in the Green decision from the Eighth Circuit and Anderson in the Sixth Circuit. But I think the more important point is not even the cases that can't come back. It's the very waste of time and resources litigating whether to stay or dismiss when it's such a one-sided bargain. There are over 800 contested arbitration matters every single year. There is very little upside to saying in every one of those cases, whenever anyone disagrees about whether to stay or dismiss, the party should brief that question, the court should waste its resources deciding it, the losing party could take an appeal, instead of just saying, as a categorical matter, let's follow what the statute actually says. Well, you talk about what the statute actually says. It says stay the trial, and Respondent makes a lot of that. So what is your response to that argument? I think we have a few responses. The first is this is the trial that would happen if there isn't an arbitration. So it's staying the trial of the action. This is trying the case, staying the merits adjudication so that the parties can effectuate the arbitration agreement. The other thing I would say is that when my friends suggest that there won't be a trial because the case is subject to arbitration, that's inherently speculative. There are lots of examples where court compels arbitration, and the parties return to court, either because there's a delegation clause and it turns out the whole dispute isn't subject to arbitration. You can have the plaintiff not initiating the arbitration. You can have the defendant not paying the arbitration fees, which is what happens. But you would have an easier case if it said stay the proceeding or stay the action. I mean, the statute is using the word trial. You want us to interpret it to be proceeding or action, but that's not exactly what it says. Well, for what it's worth, the title, which is actually a part of what Congress inserted into the United States Code in 1947, does say stay of proceedings. So Congress has always understood this to be staying the proceedings, the merits adjudication. Now, I think the FAA, which is not known for being the world's most precisely drafted statute, I think still though Congress here could have used that language for a particular reason. If you stay the entire case, it's not clear the court would have jurisdiction, because remember, it's staying the case until the arbitration is over. It's not clear the court would have jurisdiction to entertain motions under the FAA that would facilitate the arbitration. So let's say the parties have trouble appointing an arbitrator. Could the court then lift the stay to decide that motion? It's not clear. But if Congress is simply saying stay the trial of the action, that's staying trying the action, staying the merits adjudication, that leaves the courts, you know, available to decide these other motions under the Federal Arbitration Act. Would a district court under Baggero, could it dismiss rather than stay a federal action or a motion to compel? If it properly concludes that it does not have subject matter jurisdiction over the case, non-diverse parties, and only involves state law issues. In that situation, if the arbitration fails, you have to go sue in state court, correct? You can't stay in federal court anyway. I want to make sure that I'm answering the question correctly, so please correct me if I'm not. You're dealing here with a situation under Section 3. So there's already pre-existing suit in federal court where there is federal jurisdiction. Now, if a court concludes that there never should be any case in federal court, the underlying case on the merits is a state law dispute between non-diverse parties, the court would dismiss. It wouldn't compel arbitration. It has no jurisdiction to do anything. But if the court has jurisdiction at the outset, then Section 3 says this is the proper remedy for enforcing the party's arbitration agreement. Do this day. Once arbitration has been had in accordance with the agreement, then the court would have the option to exercise supplemental jurisdiction and decide the case going forward under the post arbitration motions, or it could dismiss and say go to state court and force the arbitration award in some other venue. Thank you. I think just, you know, I hate to belabor it. My friends, I think one of their stronger arguments is they try to suggest that there's inherent authority for a court to decide what to do when you have an arbitration agreement. I think that fails for multiple reasons. It first fails in its premise, because there is no inherent authority of the kind that this Court has recognized as being the sort of timeless power that of decision. It's saying this is the procedure that a court should apply in deciding how to process an arbitration motion and enforce it in court. Even if there were some inherent authority, it's obviously been overridden by what we consider to be the fairly unambiguous language of the statute. Just one last point to Justice Jackson's question at the outset. My friends did suggest in their brief in opposition that trial really just meant trial, as in like the fact finding event. It didn't state anything else. That, of course, is absolutely incompatible with the entire purpose of the Federal Arbitration Act. That would say that courts could actually entertain motions to dismiss, summary judgment motions. You could have court-based discovery. You could have everything as long as the court at the very last minute stops before impaneling a jury. We don't think that's a plausible reading of the Act. Mr. Guest, I got one. Go ahead. I got one for you. On the inherent power point, and I take your point about the trial. I mean, I never filed a complaint where I didn't want a trial, and that was the whole reason why I filed the complaint. But on the inherent power, what about the district court's authority to dismiss a case for abusive litigation tactics, for example? Does this prevent that? Absolutely not. So all Section 3 does is say if the operative fact is I found that any issue in the case is subject to arbitration, what do I do? That doesn't preclude the court's ability to access any other source of Federal law that would let it do anything else in the case. Very good. Thank you. Your friend makes the point that the Arbitration Act is designed to prevent wasteful litigation, among other things. Why isn't it wasteful to maintain the case on the court docket if, for example, all claims are subject to arbitration? I don't think it's wasteful for multiple reasons, including, first and foremost, it's very little waste at all. It's just an inactive case. The court can have a status report. It can be a sentence long. The case is still pending in arbitration. The state should remain in effect. It's hard to imagine what kind of burden that would impose. And it saves waste in multiple ways. The first is that if the arbitration does fail, then the parties are coming back to the same court, filing a new complaint. They're doing new service, new case-initiating documents. They're spending a lot more of the court's time. It also would invite the court, again, as I said at the outset, to decide in each case, on a case-by-case basis, should I stay or dismiss? That is an enormous and wasteful use of the court's time that will overwhelm whatever minor savings a district court might have in not having to read a status report every so often. And the final point I'd raise is that it would also avoid the premature finality. At that point, the case is final. The party has a right to take an appeal. They can challenge the arbitrability determination. That's inconsistent with what Congress wrote specifically in Section 16. And it would invite and breed even more litigation, as this court in Bissonnette just reminded that we shouldn't be doing, while parties are stuck litigating arbitrability on appeal at the same time they're trying to arbitrate the merits in arbitration. So what do most courts do when they have a case like this where, you know, they don't want to do anything, but there it is, still has to be on my docket? Most courts, they do one of two things. They either have a requirement for intermittent status reports. Sometimes it's every three months. Sometimes it's every six months, just saying, just let us know when you're done. Other courts will move it to an active status. So it's still pending on the court's docket. There's still a stay, but then they don't even have to worry about it at all. They just leave it to the parties to let them know once they're finished with the arbitration. What's the worst thing that could happen from this? The — well, the worst thing that would happen, I think, would be the court affirming. But the second worst thing would be, I think, if this were a national rule, it's just — it's going to consume an unbelievable amount of time and resources. And what it means is, as we've seen in the Four Circuits, I mean, if you look at the dozens and dozens and dozens of reported district court decisions with parties fighting, should we stay or should we dismiss, where the upside of a dismissal is there's an immediate appeal that shouldn't happen yet, and the court — and the court is inviting potential problems in the future when parties come back and it turns out the arbitration fails for any number of reasons. And then they're litigating potentially limitations questions, possible tolling issues. It just creates an enormous problem out of a statute that's designed to eliminate problems. A simple stay, it's categorical. It's simple. Go to arbitrate. Let us know when you're done. In the meantime, it's imposing effectively no burden on anyone. Counsel — What would your argument — what would your argument look like if there were no Section 16, so neither party had the right to an interlocutory appeal? I think we'd have one fewer arrow in our quiver, but I think our argument would otherwise be identical. I think Section 16 makes it — our job a lot easier, because this Court does read sections in context. And when you have Section 16, and Congress saying specifically, you can take that immediate appeal if the Court denies arbitration, but not if they grant arbitration, and subject to 1292B. So Congress was even thinking there could be exceptions. But if you dismiss, then you have an immediate appeal because the case is final. It's — there's no second gateway with an appellate court deciding to accept a 1292B appeal. You don't have to meet any of those conditions. So I think it's really hard to understand how dismissal's consistent with Section 16. But even without that, we have our plain text reading, and we have all the other points that we've suggested are in our favor. Counsel, you've said that one of the reasons why stay is preferable to dismiss is that the Court could then sort of continue to help out with certain administrative matters operating in the background when the arbitration is happening, like the appointment of an arbitrator under Section 5, or compelling witnesses under Section 7. As I read the Respondent's response, they point to Badgero and say that, well, there might need to be an independent jurisdictional basis for the Court to continue to operate in that fashion. Is that how you read Badgero with respect to those kinds of tasks? Not at all. Badgero involved a case where there was no litigation in federal court, there was an arbitration, and then there was a freestanding lawsuit filed simply to confirm or to vacate the arbitration award. In this case, there is preexisting jurisdiction. You don't need more jurisdiction or extra jurisdiction. Once a court has power to decide the case, they can decide the case. And at that point, as this Court said in Cortez-Byrd, once there is a suit and it's been stayed under Section 3, the Court's discretion, it's supplemental jurisdiction at that point, to decide whether to engage in any of those other motions. But we don't see any inconsistency with Badgero, and in fact... What about confirmation? Is that the same kind of thing? Would you think that the parties in a case like this, if it were stayed, could come back to this same court to seek confirmation of any award that was issued? They absolutely could, and that's what Cortez-Byrd contemplates. Now, again, though, it's in the Court's discretion, we admit. The Court could say, no. I'm done with the case. Go have it confirmed somewhere else. And if the Court did that, and it was a proper exercise of the Court's discretion, then we'd be out of luck. We'd have to go somewhere else to confirm the award. Which is also, by the way, why this is very different than Section 8. Section 8, aside from dealing only with maritime cases, is a specific instruction to retain jurisdiction all the way to the entry of the decree. So Congress is addressing a very different problem in a different way. Suppose that on a Monday, a district court grants a motion to compel and sends the entire dispute to arbitration, and then the parties don't immediately ask for a stay. So on Tuesday morning, bright and early, the district court wants to clear up the docket, dismisses the case. What would happen there? I think that the parties, in reality, would come back and say, actually, we would like a stay. It's a little too early to dismiss. If the party hasn't requested a stay, which is why what we did here, I think, is the best practice, when the other side says we move to compel, in the answer to the motion to compel, if you want a stay, you should say, and we would like a stay. That way, you avoid that scenario. But technically, if the Court has acted and the party hasn't requested a stay, then on its face, Section 3 hasn't yet applied, because it only applies if a party applies for a stay. Thank you, counsel. Anything further? Thank you. Mr. Rosenkranz. Thank you, Mr. Chief Justice, and may it please the Court. When Congress directed courts to stay the trial of a case in deference to arbitration, it meant stop the litigation in court. It did not mean you must retain jurisdiction. It did not mean never dismiss, no matter how clear it is that the case will never come back to court. I get that modern lawyers often think of stays and dismissals as two completely distinct animals, but when Congress passed Section 3 100 years ago, Congress would not have drawn that stark a distinction the drafters would have understood that a dismissal was one way to stay a litigation. When Congress intended that a court retain jurisdiction, it used those words in Section 8. Even if that is not the best understanding, this Court should accept it as long as it's plausible. Courts generally have the discretion to dismiss cases without prejudice when no one is asking them to do anything here and now and when another forum is actively adjudicating the case. If Congress wants to revoke that inherent power, it's got to do it clearly. And as Mr. Geiser said, Congress did nothing clearly in this statute. Congress did not issue such a clear direction. Congress does not even mention requiring ongoing jurisdiction. It does not even prohibit dismissing. Congress passed Section 3 to enforce contractual obligations to arbitrate and to avoid parallel litigation in court, not to encourage parallel litigation and reward plaintiffs who violate their contracts by suing in court. I welcome the Court's questions. Can you give another example of this continuing discretion when you have language similar to Section 3 that gives the part that makes it clear that a stay is to be granted? Well, Your Honor, I quibble with the second half that it makes it clear that a stay is to be granted, but yes. What's unclear about it? Well, so when Congress used the word stay back in 1925, it meant that it was requiring courts to stop the litigation, and it understood that courts could achieve it by either retaining jurisdiction over the case and putting it on ice or by dismissing it without prejudice to come back if there's ever something for the court to do. In 1925, the word stay was just not categorically inconsistent with a dismissal. The lead definition of stay in Black's Law Dictionary at the time was stopping the act of arresting what? Arresting a judicial proceeding. Another said that a stay of the action could include a total discontinuance. Counselor, putting aside that the title says stay of proceedings and Black's Law Dictionary makes clear that that's different from dismissal. I'm going to put that aside. Can't put aside the language which says stay until such arbitration has been had in accordance with the terms of the agreement. And so it's putting a limit. And it also says providing that the applicant for the stay is not in default in proceeding with such. When the application is made, the judge can't tell how long it's going to be, can't tell whether a party is going to go in default. I can't read dismissal into those two conditions. If they were going to permit dismissal, they would have put stay the action, period. And you can reopen the action or you can sue again if you don't have the arbitration concluded or if the other party defaults or something. That's not how they wrote it. I understand, Your Honor. Let me just, I need to quibble with the, with your first premise about Black's Law Dictionary. It supports us, not the other side. The very first definition is about, about stalling the proceeding. It's about stopping. But I'll answer the question about the, both the durational limitation and the proviso. They're two separate pieces. Until simply means how long the litigation has to stop. If the court has dismissed without prejudice, the durational language dictates when the case can return to court. The durational language was also necessary to establish that any non-arbitrable claims which cannot be dismissed may be litigated in court when the arbitration is over. But Section 3 is not a command to the court to retain jurisdiction for the duration of the arbitration. It does not say you must retain jurisdiction. When Congress wanted courts to retain jurisdiction, as it did in Section 8, it said retain jurisdiction. And it would not have needed to say retain jurisdiction in Section 8 if Section 3 already required the court to retain jurisdiction. As to the proviso that a stay applicant not be in default, that makes perfect sense on our reading also. If a plaintiff starts by filing an arbitration proceeding, that's the first thing. The defendant then refuses to arbitrate. The plaintiff can then file in court under Section 4. The proviso says, when the defendant says, hold on, wait a minute, you need to arbitrate, the proviso says, no, the defendant cannot force an arbitration because the defendant is in fault. Similarly, if the plaintiff begins in court and then the court dismisses without prejudice and the defendant then defaults, the proviso says that the plaintiff has a free pass from the arbitration. Okay. Thank you. Have there been any problems in the six circuits that have followed your friend's rule? So, yes, Your Honor. The problems in those circuits is that the courts are required to keep these cases on their dockets. And when you look at the differential costs to the district courts itself, as opposed to the parties, this is, if you nationalize this, this is death by tens of thousands of cuts. You can imagine the practice articles that are going to emerge after this court issues its opinion if it's in favor of the petitioners. They will say exactly what Justice Thomas said in his very first question. Never ever file an arbitration first. Start in court, preferably in federal court, because when you're there, the court will be a helicopter parent for as long as you want it. Don't worry if there's zero basis for you to even resist arbitration. Well, but what's the big — Well, I guess — I was just going to say, well, I guess the flip side of that is it's a much greater burden if the case isn't there and something arises where you need to go to court. You kind of have to start all over. So, Your Honor, two observations about that. First is the burden on the district court in just having the case sitting there. There are 100,000 arbitrations a year. Mr. Geiser refers to only 800 of them that ever come back to court because they are contested. Once all of these stays are sitting in court, the court has to manage them. It has to report on them. It has to hold status conferences, possibly for years. And think about it from the perspective of these district courts. I know it's easy to say, what's the big deal? Just hold a status conference. But there are courts that are in dire circumstances. They are overwhelmed. They are in emergency — Is there a rule that the district court has to hold a status conference? I was not aware of that. No, there's not a rule that a district court has to. So they could just ask for a one-line report. The court does not have to hold in-person status conferences. That is correct. But simply having to keep track of all of these cases. In some Federal courts, there's no such thing as administrative closure. The court is constantly documenting and asking, wait a minute, is this case still alive? Well, I may not be familiar with the practice, but why can't you just — constantly monitoring it, why don't you tell the parties if you need to get back or when something happens in the arbitration, let us know? Well, Your Honor, it is the responsibility of the district court to know what's on its docket. Yeah, well — And not to keep cases on the docket that are not active. It's not supposed to be keeping cases that, for example, have settled and no one's told the court, or where the parties go to a different court for confirmation, which is perfectly — But presumably, Mr. Rosencrantz, the district court will just keep a list of cases now in arbitration. And that list will exist in some file someplace, and nobody will do anything with it, except if there's a problem. Well, this court still has to keep a list that is still work, and it is more work than is necessary, because when you think about the flip side, to answer the second half of the Chief Justice's question, the flip side is, OK, so a party has to — if it ever needs further judicial intervention, the party has to file a new action. It's a streamlined process. It almost never happens. Courts almost never need to intervene to appoint an arbitrator or to compel a witness. Mr. Geiser points out, a very, very tiny proportion of these arbitrations are even ever contested, and they may not even be contested in the same court. So it is needless — But don't parties often seek confirmation of arbitration awards? No, Your Honor. It's very rare. If the party on the other side is going to pay the judgment, for example, or if the defendant has won, no one really seeks confirmation. Well, sure, if the defendant has won, but let's say we have a situation in which a plaintiff who originally brought this case in court because they thought it was the kind of thing that should be litigated in court, lost the motion for arbitrability, so it's now sent off to an arbitrator, and then, miracle of miracles, they win on the arbitration. My question is, isn't that a situation in which a plaintiff could at least come back to the district court if it had been stayed and ask for confirmation? Hypothetically, could, yes. It's very rare. But if the case is dismissed, they would have to actually file a new action with the fee and everything else to open up that case to — which they, by the way, thought should have been in court to begin with, because in my hypothetical, that's where they brought it originally. Why isn't that more burdensome for the overall system than to just allow the district court to put this on a list somewhere, and if the plaintiff wins, be able to entertain a motion for confirmation? Well, so two answers, Your Honor. The first is, as I was saying earlier, yes, hypothetically, the plaintiff in that situation could seek confirmation. It is very rare, because defendants almost never challenge the judgment in the first place. So no one ever seeks confirmation. The case is sitting there without any need ever to come back to the district court. The second answer is, filing a new action, it sounds like it's such a big deal, but there's a streamlined process. It is not that much of a burden — You have to pay, don't you? I mean, you'd have to file a new action with it. Like, we said, I paid on day one, because I brought this in court, and it was whatever the filing fee is. My case got shunted to arbitration. I win, and now you're saying I have to pay another $500 to — Sure. Sure. And then the flip side is, there is a tax on the parties who are sitting in arbitration and also have to report to the district court. What the court would basically be saying to those parties is, sure, you have a right to arbitration, but you've got to report to the district court. Sometimes you have to negotiate with the other side on what that report contains. You've got to quibble over who's in default and why this is taking so long. And so that's hundreds of dollars of taxes on both parties for a case that doesn't need to sit in. Maiden, if you could — Well, you're — I'm sorry. No, go ahead. You're saying that it's more trouble to let the thing just sit there than to file a new action, right? I mean, you're saying, well, even if it — you know, if it's just a stay, you know, it's just sitting there, but they've got to keep track of it and whatever, and say — and the alternative is file a new lawsuit. It seems to me that the alternative would be a lot more burdensome than just sitting there. It could be, but it may not necessarily be, if there are constant and repeated reports. But we're not basing our argument on cost. We're basing our argument on the language of the statute. And a century ago, lawyers — And just before you get back to the language, I mean, mightn't the statute of limitations have run? If you have to file a new action, but the statute of limitations has run in the meantime, there's no tolling of the statute of limitations in the circumstance that you're talking about, is there? There can be in some jurisdictions, but there's an easy solution to that. If a party wants to oppose a stay on the ground that there is a statute of limitations problem, they just raise that as a basis for the district court to deny dismissal. And the district court can consider that, or it can condition dismissal. But that's just beginning to sound very complicated. It's like sometimes I should dismiss, sometimes I shouldn't dismiss, I have to go figure out what the statute of limitations consequences are. Your Honor, look at the papers before the district court on this case when the parties were fighting about or arguing about stay versus dismissal. It was three paragraphs in their response brief in response to our motion to dismiss and two paragraphs in our response brief. I'll give you the page numbers. It's 97 to 98 in their response brief and 103 to 104. It's not that complicated. But petitioners are trying to cram a lot of meaning into the word stay. They say it means stop the litigation and continue to exercise jurisdiction and don't dismiss, regardless of how unlikely it is that anyone is ever going to come back to court. The word stay does not carry all of that meaning. When Congress wanted to communicate don't, wanted to communicate that the court must retain jurisdiction, that's what it said. It said retain jurisdiction, which is what it said in Section 8. I would also underscore there's another reason to read the statute our way. Section 4, a plaintiff can bring an action in the first instance, as I was saying earlier, under Section 4, seeking an order directing the court to compel arbitration when the defendant has refused to engage in arbitration. But Congress never said that the court has to retain jurisdiction in that circumstance. And the norm in that circumstance is that the district court dismisses after ordering arbitration because that's the only thing it's been asked to do. Now, if it was so important for Congress to make sure that parties never appeal a dismissal, excuse me, never appeal an order to arbitrate while the arbitration is going on, if it's so important to Congress that Federal courts retain jurisdiction while an arbitration is going on, it would have applied the same rule to Section 4, but it didn't. I was saying earlier that even if the court thinks that petitioner's reading is better, they cannot avoid the language of the statute or the ambiguity, excuse me, they cannot avoid the result that we're arguing if the statute is ambiguity, is ambiguous. Any doubt has to be resolved in favor of maintaining the district court's traditional discretion to dismiss cases when appropriate and preserving the backdrop common law in which courts routinely dismissed in deference to arbitration. When parties have nothing that they want the court to do here and now, a court has the interest of controlling its own docket and maximizing efficiencies for the court and all of the parties. Courts also routinely dismiss without prejudice when the parties are litigating a case before another forum. For example, when an agency is considering an important issue or a foreign court. The rules are especially salient in the arbitration context because, as I was saying earlier, the overwhelming likelihood is that this case is never coming back to any court and certainly not, or potentially not, even to this court. I'll give you an example. If parties settle a lawsuit — So how is that argument consistent with the language that Justice Sotomayor puts forward? I mean, I understand your point about the overwhelming likelihood is that it's not coming back, but the statute says, stay until, so at least Congress thought that it could come back, right? Congress certainly thought that there are circumstances in which a case could come back to the court, for sure. Right. So doesn't that undermine your argument that we have to read this as though, you know, with an understanding that it's never coming back? No, Your Honor, not with the understanding that it's never coming back, but preserving the district court's discretion to say, look, if you have something that you want to come back to me with, come back to me. But the answer to your question, Your Honor, is that until still works under our reading, because I was — as I was saying earlier, until simply indicates how long the litigation has to stop for, and the party can come back to the court when — Yes, I understand. Thank you. I thought until goes to the verb stay. Stay until. Right. And if you read the word stay to mean stop, which could entail a dismissal, you have to stop it until the arbitration is completed. And at that point, the court no longer has to stop it, so when it was dismissed without prejudice, the party can come back to the court, and the stay provision no longer applies. And let me just say one last thing, which is that this court should also read Section 3 in light of the problem that Congress was trying to solve with Section 3. It was the problem that too many courts were not honoring arbitration obligations and were not stopping the litigation when parties violated their arbitration agreements and brought their claims in court. There's no reason to believe that Congress wanted to address that problem by requiring courts to hold onto lawsuits unnecessarily, much less by requiring courts to hold onto them in order to reward plaintiffs like petitioners who violated their contractual obligations to go to arbitration instead of court. Just to sum up, this court is not deciding, and we're not asking the court to decide what stay means in all contexts and for all time. And all I'm saying here is that context matters. In the context of the Federal Arbitration Act passed a century ago, Congress was trying to solve a specific problem that courts were refusing to stop litigation in deference to courts with the leading dictionary definitions and the cases that routinely dismissed. At the time, the common way to stop litigations was through discontinuance or dismissal. And Congress said retain jurisdiction when that's what it meant. All of this supports our position that stay means stop under Section 3. But at a minimum, the alternative reading is not as clear as my friend on the other side suggests, and it's not enough to overcome both the prevailing common law practice and the court's inherent power to dismiss cases with prejudice when another forum is addressing the dispute, and none of the parties have anything for the court to do here and now. On your point about Congress's overall objective, if it's dismissed rather than stayed, then that opens up the interlocutory appellate right. Would Congress have wanted that? So Your Honor, a couple of things to say about that. First, it's simply not true that the FAA generally postpones appellate review of orders to arbitrate until after the arbitration. I was giving the example of a case that begins in arbitration, and the defendant refuses to arbitrate. What happens next? There is an action under Section 4, and that is an action that asks for only one thing, which is to compel arbitration. When that order is granted, the case is routinely dismissed and the appeal will follow. So it is simply not true that there is a grand congressional design not to allow appeals of orders granting arbitration. In any event, this Court has already rejected Petitioner's argument about the effect of Section 16b in Greentree. That case explains that 16b is about interlocutory appeals, which is obviously where Congress was anticipating that a court would stay, but was not saying that the court has to stay. The court still has the discretion. Nothing in that section bars an appeal of a final order, which is what a dismissal is. And the last thing I'd say about that is that I know one reads a statute as a whole, but we have to bear in mind that Congress used the phrase, stay the trial of the action. It wrote it in 1925. Section 16 was passed 60 years later. It is highly unlikely that that would be true. And I would also say that Congress acknowledged in its Senate summary that it was anticipating that there would be dismissals followed by appeals. The dismissals would be final and that would trigger an appeal. Thank you, counsel. Thank you. Rebuttal, Mr. Geiser? I'll be brief. My friend says that we're cramming a lot of meaning into the word stay. We're just saying that stay means stay. At the time in 1925, if you look to Black's Law Dictionary, stay was state of proceedings, which is what this is, was defined as a temporary suspension of the case. It's exactly what Section 3 is doing. My friend says there are other dictionaries that say total discontinuance. He's referring to the Dictionary of American and English Law. That's the second definition of stay. The first definition was a temporary suspension. Again, exactly what stay always means. I think if this Court tried to stay a lower court order and the lower court turned around and dismissed the case, I think the Court would be fairly surprised. It's just not a consistent understanding of what stay means. Justice Sotomayor is exactly right that the definition of stay meaning suddenly dismiss is inconsistent with the surrounding clauses. Justice Jackson is also correct that it's inconsistent with the proviso at the very end of Section 3 that shows that Congress itself contemplated that cases could come back to court because arbitrations do sometimes fail. Sometimes parties are in default. My friend pointed to the difference between Section 4 and Section 3 and said that you can take an immediate appeal when a Section 4 petition is granted and dismissed. That's because there's no alternative. When else can you take that appeal? You'd have to craft an entire new pullet scheme. When would you take the appeal from 30 days from what event? Where would you file the notice of appeal? You know, if there's no longer a court case, I don't know where you go to the district court to file the notice of appeal. Congress looked at that and said, no statute perceives its purpose at all costs. We can't have unreviewable district court orders compelling arbitration. So in that context where there isn't a preexisting freestanding suit, we will allow the immediate appeal. In terms of wasting time, it is inherently speculative to say some cases are unlikely to come back, some cases are likely to come back. Will there be a tolling problem? Will there not be a tolling problem? Those are exactly the kind of issues that are pointless for courts and parties to debate. It's much easier to say, let's just stay it. It's exactly correct. As multiple members of the Court has recognized, you maintain a list. This Court will maintain cases that are contemplating settlement on the honor petition stage docket. I don't believe it's overwhelming the Court to do that. It's not overwhelming district courts who can truly say, just let us know whenever the arbitration is finished. If you do look at the briefing in this case, I think it probably consumed a good 50 or 100, you know, status worth of time of status reports that we could have filed instead of having to debate this at the district court and then debate it on appeal. Unless the Court has further questions? Thank you, Counsel. The case is submitted.